In the Matter of John Chiodo, Petitioner, against James R.
Macduff, as Commissioner of Motor Vehicles of the State of
New York, Respondent.

Supreme Court, Special Term, Onondaga County, August 18, 1954.

*Frank Baker* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Herman H. Arkin* of counsel), for respondent.

SULLIVAN, J.   The petitioner's operator's license and registration have been revoked by the Commissioner of Motor Vehicles for the reason that he had been convicted of speeding on three occasions within a period of eighteen months.   (Vehicle and Traffic Law, § 71, subd. 2, par. [c].)   It appears that he was arrested for speeding in the village of North Syracuse on August 1, 1953, for which he was issued a summons to appear before the Police Justice of the village on August 15th. He pleaded guilty to this charge for which he was fined $15. The Police Justice marked the petitioner's operator's license which showed only one previous conviction and that was for speeding in the city of Oswego on July 26, 1952.   On December 29, 1953, the commissioner ordered the revocation of the petitioner's operator's license.

It now develops that the petitioner had had another previous conviction for speeding in the Traffic Court of Syracuse on July 15, 1952, which did not appear on his operator's license.

Subsequent to the order by the commissioner and sometime in March, 1954, petitioner submitted his affidavit to the commissioner setting forth the facts that, at the time of his plea to his third charge of speeding on August 15th, the first conviction upon a similar charge at Syracuse on July 15, 1952, had not been marked on his operator's license, and also an affidavit of the Police Justice, who stated that, at the time (of petitioner's plea of guilty to the speeding charge before him on August 15th) there was only one conviction for speeding marked on the operator's license of the petitioner, and that had there been two previous convictions marked on the license, he would have inflicted a more substantial fine upon the petitioner, and that he would have informed him that a third offense would necessarily have resulted in revocation of his operator's license and license plates.

It is the contention of the petitioner that his operator's license should not have been revoked by the commissioner, even though he had had two previous convictions for speeding, since only one appeared on his operator's license.   He claims that, at the time of his plea of guilty to the third charge of speeding, he had forgotten the conviction which had not been marked on his operator's license, and that, if it had been marked on the license, he would not have pleaded guilty.

As a part of his answer, the Commissioner of Motor Vehicles submits an affidavit of the Police Justice, under date of June 14, 1954, in which the Police Justice states that, prior to the taking of the plea of the petitioner, he read the charge to the petitioner and he asked him whether or not he desired counsel, and if so, he was entitled to an adjournment for that purpose, and he was also entitled to a jury trial. The petitioner answered that he did not wish counsel and he did not wish a trial. The Police Justice, in his affidavit, also states that he read section 335-a of the Code of Criminal Procedure to the petitioner.

Under date of August 15, 1953, the Police Justice certified to the commissioner the conviction of the petitioner for the charge of speeding, and also that he had read the provisions of section 335-a of the Code of Criminal Procedure to him. The date stamped on this certificate would indicate that it was received by the commissioner on September 9, 1953.

The petitioner now asks this court to annul the order of the commissioner which revoked petitioner's operator's license because of the fact that there was only the one conviction marked on it, and that the petitioner should not be penalized for the failure of the clerk of the Traffic Court to have marked on his license the conviction of July 15, 1952, at Syracuse.

The Attorney-General, in addition to opposing the petitioner's application on this ground, also contends that the application herein under article 78 of the Civil Practice Act was not made within four months after the determination of the commissioner became binding and final (Civ. Prac. Act, § 1286), which was December 29, 1953, or within three days thereafter.

The application herein was apparently made on or after May 27, 1954, or some five months after the order of revocation by the commissioner.

The petitioner replies that he sought a reconsideration of the matter from the commissioner by submitting to him the affidavits of the Police Justice and petitioner, and that his present application under article 78 of the Civil Practice Act is timely in that it is within four months of the date when the commissioner refused to grant petitioner's request for a reconsideration of the matter.

The application is apparently untimely, because section 1286 of the Civil Practice Act specifically states: " a proceeding * * * to review a determination * * * must be instituted by service of the petition and accompanying papers * * * within four months after the determination to be reviewed becomes final and binding, upon the petitioner * * *

either in law or in fact ''. (*Petrzala* v. *Fletcher,* 102 N. Y. S. 2d 943.)

The fact that the petitioner had requested the commissioner to reconsider his decision in issuing the order of revocation does not extend the time nor fix a later date from which the time to proceed under article 78 of the Civil Practice Act is to commence. (*Keays* v. *Conway,* 105 N. Y. S. 2d 944, 946, and the cases cited therein.)

In the instant case, the order of the commissioner was made on December 29, 1953. Petitioner's order to show cause why the relief requested should not be granted was dated May 27, 1954. It does not appear in the moving papers of either party when the order of revocation by the commissioner was mailed to the petitioner, nor when he received it. Therefore, it is fair to assume that the order, which is dated December 29, 1953, was mailed on that date. It should have, in the regular course of mail delivery, been received by him, at the latest, early in January, 1954. Hence, the four months period in which the defendant could have made the application would have expired early in May, 1954, and most certainly not as late as May 27th.

Had the application been timely the court would be constrained to deny the relief because of the ruling in *Matter of Eckerson* v. *Macduff* (284 App. Div. 56). In the instant case, it is to be remembered that the Police Justice certified to the commissioner that he read the provisions of section 335-a of the Code of Criminal Procedure to the petitioner before a plea of guilty was entered. In *Matter of Eckerson* v. *Macduff,* Presiding Justice McCURN wrote (pp. 59-61):

'' It is, of course, the design of both the former statute and the amended statute that the magistrate before accepting a plea should bring to the knowledge of the defendant the fact that a conviction following a plea of guilty is equivalent to a conviction after trial, and that such conviction may result in either mandatory or permissive revocation of his operator's license or certificate of registration, or both, in accordance with the provisions of law applying to the circumstances of the case. Court decisions construing the former statute have, as above indicated, placed the burden upon the magistrate to determine from the facts and circumstances and to correctly inform the defendant whether such revocation or suspension in his case would be mandatory or merely permissive. When the Legislature amended the statute it knew of the construction which the courts had placed upon the earlier statute, but nevertheless it directed that the defendant be instructed ' in substance as

follows ', omitting any instruction to the defendant as to whether such revocation or suspension would be mandatory or merely permissive in the case at hand. Having used the words ' in substance as follows ', it seems unlikely that it intended to direct an instruction not included therein. Moreover, if it did so intend, it would have effected no change from the former statute and the amended legislation would become a useless act. * * * The memorandum [New York State Legislative Annual 1953, p. 266] concludes: ' It seems that substantial justice can be done by providing for a uniform warning to be given in all cases. It would then be the responsibility of the defendant before making a plea to determine what action would follow as a result of any plea he might make and he would then be governed accordingly. *It seems entirely incorrect to place the burden upon the justice when he does not have adequate information before him to adequately and properly perform his judicial duties.'* [Italics mine.]

" The amendment was enacted by the Legislature with full knowledge of prior court decisions and of the difficulties in administration as pointed out by the memorandum from the Bureau of Motor Vehicles. It appears to follow the recommendation for a uniform warning to be given in all cases. It outlines the substance of the instruction to be given to the defendant and in effect puts into the mouth of the magistrate the substance of the words to be used. As though speaking to the defendant it reads: ' *If you are convicted, not only will you be liable to a penalty, but in addition your license to drive a motor vehicle or motor cycle, and your certificate of registration* * * *.*" [Italics mine.]

The court can find no merit in the petitioner's contention that the Police Justice would have advised the petitioner that a guilty plea or conviction would result in the loss of his operator's license. He was required to advise the petitioner with regard to section 335-a of the Code of Criminal Procedure by reading the wording of the section, which he certifies that he did. (*Matter of Eckerson* v. *Macduff, supra.*)

If the Police Justice had known of the other previous conviction which had not been recorded on the petitioner's license, he would have inflicted " a more substantial fine " as he states in his affidavit. It follows that the absence of the notation of the other conviction on the petitioner's operator's license was an advantage to him, because he received a less severe punishment because of the Police Justice's ignorance of this conviction which had not been noted on his license.

The provisions of subdivision 11 of section 70 of the Vehicle and Traffic Law are not for the benefit or information of the holder of the operator's license, but rather for the information of courts which may have subsequent dealings with the operator of a motor vehicle on account of traffic violations. The instant case is an example of the purpose and intention of this section of the Vehicle and Traffic Law. The statute places no duty on the accused to inform the court of any previous conviction or convictions. Subdivision 11 of section 70 of the Vehicle and Traffic Law permits the commissioner to devise a method to inform the courts of previous convictions of an operator by providing space on the license to note them. The information thus acquired is to assist the court in passing sentence, and in a proper case, to suspend or revoke the license, if he sees fit.

There is no obligation on the part of the Commissioner of Motor Vehicles to provide space on operators' licenses for the notation of convictions. The subdivision, in part, reads: " The trial court or clerk thereof shall endorse on the chauffeur's or operator's license of the defendant, *when space therefor is provided by the commissioner,* in such form and in such manner as the commissioner may prescribe, the record of such conviction ". (Emphasis supplied.)

It is also interesting to note that subdivision 11 of section 70 of the Vehicle and Traffic Law provides, in part, that " the trial court or the clerk thereof shall within forty-eight hours certify the facts of the case to the commissioner, who shall record the same in his office ".

It is to be noted, from the two foregoing excerpts from subdivision 11 of section 70 of the Vehicle and Traffic Law, that the trial court or clerk thereof, shall certify to the commissioner and shall indorse on the license. Yet, subdivision 11-a of section 70 of the Vehicle and Traffic Law provides for punishment by a fine for each separate offense of any person chargeable with the duty of reporting a conviction or final disposition to the commissioner. This court fails to find any penalty prescribed for the failure of any person to note a conviction on an operator's license.

It would seem that, if the Legislature intended that the commissioner must provide space on the license for the noting of convictions, this section would have pertained to the whole of subdivision 11 of section 70, and not just to that part which relates to the certifying to the commissioner.

The petition is dismissed. Order accordingly.